UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WOJTOWICZ,<br><br>         Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>         Defendant. | Case No.: 1:19-cv-1138 JLT<br><br>ORDER GRANTING PLAINTIFF'S APPEAL (DOC. 24) AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF ROBERT WOJTOWICZ, AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Robert Wojtowicz asserts he is entitled to disability insurance benefits and a period of disability under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and his subjective complaints. For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

### BACKGROUND

In August 2016, Plaintiff filed an application for benefits, asserting disability due to a wrist injury, shoulder injury, and hip arthritis. (*See* Doc. 12-4 at 2; *see* Doc. 12-3 at 16)  The Social Security Administration denied the application at the initial level and upon reconsideration. (*See* Doc. 12-4) Plaintiff requested an administrative hearing on the application and testified before an ALJ on April 25, 2018. (*See* Doc. 12-3 at 16, 33)  The ALJ found Plaintiff was not disabled and issued an order denying benefits on September 26, 2018. (Doc. 12-3 at 16-27)  Plaintiff requested review by the Appeals

Council, which denied the request on June 15, 2019. (*Id.* at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to the five-step process, the ALJ first determined Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date … through his date last insured of March 31, 2018." (Doc. 12-3 at 18) Second, the ALJ found Plaintiff's severe impairments included: "right shoulder tendon rupture; status post right carpal tunnel release surgery; and osteoarthritis of the right hip." (*Id.*) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.*) Next, the ALJ found:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [he] cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, crawl; can occasionally reach overhead with the right dominant upper extremity; cannot be exposed to unprotected heights and other hazards; and frequently handle and finger with the right upper extremity.

(*Id.* at 19) With this residual functional capacity, the ALJ determined at step four that Plaintiff "was unable to perform any past relevant work." (*Id.* at 25) At step five, the ALJ found "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as cashier, cafeteria attendant, and storage facility rental clerk. (*Id.* at 25-26) Thus, the ALJ concluded Plaintiff was not disabled through his date last insured. (*Id.* at 27)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the medical evidence, including the opinion of his treating physician. (Doc. 24 at 13-22) Plaintiff also asserts the ALJ erred in evaluating the credibility of his subjective complaints. (*Id.* at 22-26) On the other hand, the Commissioner asserts the "final

3

decision should be affirmed because the ALJ's findings were supported by substantial evidence and free of legal error." (Doc. 25 at 12) Specifically, the Commissioner argues that "[t]he ALJ properly resolved the conflicting medical opinion evidence" and Plaintiff's subjective complaints. (*Id.* at 4, 9) (emphasis omitted)

**A.     Evaluation of Plaintiff's Subjective Statements**

Plaintiff testified at an administrative hearing on April 25, 2018. (Doc. 12-3 at 16) He reported he was born in 1971. (*Id.* at 36) He said that he "was born with RA, degenerative bone disease, and immune deficiency." (*Id.* at 37) In addition, Plaintiff reported he suffered "a gunshot accident in [his] right hip," which went through is femur socket and he still had "lead fragments in [his] buttocks." (*Id.*)

He reported that he performed state-licensed contracting, which included "[t]earing off roofs, repairing roofs, applicating roofs, water shedding shower pans, and bath pans indoors." (Doc. 12-3 at 39) Plaintiff estimated this work required him to lift and carry "50 plus" pounds. (*Id.*) He stated that he last worked as an inspector, and he "would inspect other contractors installing ... materials on federal buildings, Naval installations." (*Id.*) Plaintiff said that when not expecting, he did service work "[r]epairing roofs on school districts, and hospitals, and things like that." (*Id.* at 40)

Plaintiff stated he suffered a work-related injury when he "went to pick up a tire from the tire store," and his "bicep snapped from [his] shoulder." (Doc. 12-3 at 44) He testified that he was told "they couldn't do anything about it," and his "muscle will finally deteriorate." (*Id.*) In addition, he stated that he had carpal tunnel surgery, which lead "to numbness, lots of pain, and [he] could hardly shake someone's hand without it hurting." (*Id.*) Plaintiff reported he had a "[t]otal loss of strength, and immobility at times." (*Id.*) For example, he explained that he once went to grab his cane, but "slipped off [the] cane," and injured his knee as well. (*Id.* at 44-45) Plaintiff believed the surgery "made it worse." (*Id.* at 45)

Plaintiff stated he had "difficulties just being mobile, getting out of bed, getting out of a chair, getting out of the car, things of that nature especially." (Doc. 12-3 at 42) He said his leg "could give out at any time" when he was walking, and "that's happened numerous times." (*Id.*) Plaintiff estimated that "once every month, month and a half" he would be bedridden for a few days as a result of his pain. (*Id.* at 42-43)

In addition, Plaintiff said he had "memory issues," which he attributed to "a major accident" that he suffered in 2009. (Doc. 12-3 at 46) He reported the injury required "12 staples and 8 stitches to the left side of [his] head." (*Id.*) Plaintiff said his memory issues caused him to have "to turn around twice for things [he] forgot" the morning of the hearing. (*Id.*) He stated that would "be lost" without his wife, because he can "literally forget what [they] had for dinner" the night before. (*Id.*)

Plaintiff testified his shoulder felt "like it's out of socket," and he could not lift anything "too far above [his] head, let alone try and pick[] things up evenly." (Doc. 12-3 at 47) He said he could not open a jar for his wife, and it felt as though he overexerted the muscle, "like working out too hard," at all times. (*Id.*)

He stated he could take out the trash and do some laundry, but was unable to put clothes on hangers or hang them in a closet because of the pain "reaching up and out." (Doc. 12-3 at 48) Plaintiff reported he also could not finish mowing the yard, and he had difficulty "moving things around in the garage, keeping things clean." (*Id.*) He explained he could do activities that required movement at his low back, such as pushing a broom or raking leaves, "for maybe 20 minutes" before he needed to stop. (*Id.* at 48-49)

Plaintiff estimated he could sit "from 5 minutes to 20 minutes" before he needed to "readjust" and "reposition [his] pelvic bone." (Doc. 12-3 at 51) He believed he could sit for about 40 minutes total before he needed to stand or walk. (*Id.*) In addition, Plaintiff stated he could stand "15, maybe 20" minutes in one spot. (*Id.* at 52) He said walking "helps with the arthritis," and he could walk "a quarter of a mile"—which was the distance he tried to walk with his dogs— in "seven, eight minutes." (*Id.*) Plaintiff said driving was "kind of hard sometimes" and his wife did most of the driving, because the car had a stick shift and it was painful to use his right foot on the clutch pedal. (*Id.* at 36-37) He said he had a front wheel walker, which he used "[a]s needed." (*Id.* at 53-54)

1. <u>Standards for reviewing a claimant's statements</u>

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

Second, if there is no evidence of malingering, the ALJ must make specific findings as to credibility by setting forth clear and convincing reasons for rejecting a claimant's subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling[1] 16-3p, 2017 WL 5180304 (2017); *see also Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) (findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony").

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

///

---

[1] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

2.      The ALJ's analysis of Plaintiff's statements

Addressing Plaintiff's statements regarding his impairments and the severity of his symptoms, the ALJ stated:

> After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> Despite his impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction.  The claimant admitted activities of daily living:  he can take out the trash, wash clothes, drive, care for his dogs, manage medications and appointments, exercise, visit family and friends, use a computer, perform light household chores, and attend to his care (Exhibit 14E; and hearing testimony).  Some of the physical abilities required in order to perform these activities are the same as those necessary for obtaining and maintaining employment.  The claimant's ability to participate in such activities undermines the claimant's allegations of disabling functional limitations.
>
> Additionally, the evidence reveals during this time the claimant underwent conservative and surgical treatment for his right carpal tunnel syndrome.  This was followed by routine postoperative care and therapy.  The claimant reported gradual overall improvement.  While he reports continued symptoms, he retains the ability to engage in such activities such as using a computer, walking his dogs, driving, performing light household chores, and completing necessary forms for providers and others.  The level of care he has required since surgery has remained routine and/or conservative.
>
> As for the claimant's right shoulder, evidence reveals his symptoms are adequately managed with conservative care including medications and physical therapy treatments. The records reveal during this time the claimant underwent physical therapy treatment and reported improvement of the pain and functioning of the shoulder.  In fact, there were several physical therapy visits where the claimant was noted to report feeling better or good and noticing improvement (Exhibit 4F pages 21, 23, 25, 30, and 31).  In fact, from the evidence in the record, it appears the claimant's treatment needs decreased during 2017 and beyond.
>
> As for the claimant's right hip, evidence in the record reveals this condition and symptoms are improved with treatment.  In fact, the claimant has admitted walking improves his symptoms.  He engages in regular exercise, walks his two small breed dogs, and can engage in activities as outlined herein above. Overall, examinations during this time were unremarkable as they relate to his right hip.  While he testified to needing a walker, it appears this was based upon his fear of falling and inability to use a cane postoperatively.  Although the treatment records do not consistently indicate he presents for appointments with an assistive device, and in fact he did not appear with one at the time of the hearing.
>
> Based on this evidence, I find that the claimant's subjective allegations are inconsistent with the medical evidence and other evidence in the record.

(Doc. 12-3 at 20-21)  The ALJ then summarized the medical record related to Plaintiff's additional physical impairments.  (*See id.* at 21)

Plaintiff argues that the ALJ failed "to provide 'clear and convincing' reasons for rejecting [his] credibility regarding the severity of his pain and limitation symptomology." (Doc. 24 at 22) On the other hand, the Commissioner argues the ALJ properly evaluated Plaintiff's subjective complaints, by considering "the medical evidence, Plaintiff's activities of daily living, Plaintiff's treatment history, and medical opinions." (Doc. 25 at 9)

    a.  *Activities of daily living*

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), citing *Fair*, 885 F.2d at 603. For example, a claimant's ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). However, an ALJ must make a specific finding relating to the transferability of the activities to a workplace to refute a plaintiff's allegations of disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

  The Ninth Circuit found the ability to "take care of … personal needs, prepare easy meals, do light housework, and shop for some groceries … may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990); *see also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances..."). The ALJ noted Plaintiff could "take out the trash, wash clothes, drive, care for his dogs, manage medications and appointments, exercise, visit family and friends, use a computer, perform light household chores, and attend to his care." (Doc. 12-3 at 20) However, the ALJ failed to acknowledge the difficulty and limitations Plaintiff reported with these tasks. For example, Plaintiff testified he could do laundry, but was unable to hang clothes on hangers or in the closet due to the pain he had "reaching up and out." (*Id.* at 48) Further, Plaintiff said he could only do chores such as sweeping or raking "for maybe 20 minutes" before he had to stop, and walk a quarter of a mile with his dogs. (*Id.* at 48, 52)

  Importantly, the Ninth Circuit determined the fact a claimant engages in normal daily activities

"does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Court explained, "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.*, quoting *Fair*, 885 F.2d at 603. Rather, an ALJ must make a determination as to whether a claimant's activities on are transferrable to a workplace. *See, e.g., Stubbs-Danielson*, 539 F.3d at 1175. Here, the ALJ found "[s]ome of the physical abilities required in order to perform [Plaintiff's] activities are the same as those necessary for obtaining and maintaining employment." (Doc. 12-3 at 20) However, the ALJ failed to identify the activities to which she was referring, or find that Plaintiff spent a "substantial" part of his day engaged in such activities. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting). Indeed, the Ninth Circuit opined, "Daily household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Consequently, the limited activities identified by the ALJ do not constitute clear and convincing evidence sufficient to discount Plaintiff's testimony.

            **b.**      *Treatment*

In assessing a claimant's statements regarding the severity of his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c)(iv). Further, the Ninth Circuit determined that an "ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the failure to seek treatment was "powerful evidence"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe treatment commensurate with the "supposedly excruciating pain" alleged).

Importantly, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)). Thus, an ALJ errs in rejecting subjective complaints on these grounds where he fails "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff." *See Candice C. v Saul*, 2019 WL 5865610 at *4 (C.D. Cal. Nov. 8, 2019).

The ALJ noted Plaintiff's treatment included conservative treatment and physical therapy. (Doc. 12-3 at 20-21) Plaintiff contends the ALJ erred in rejecting his testimony on this basis, because "there are numerous references by treating physicians to the fact that due to the chronic nature of Mr. Wojtowicz's injury, surgery for his severe right shoulder tendon rupture was not an option." (Doc. 24 at 25, citing AR 282, 300 [Doc. 12-8 at 7, 25]) Indeed, the ALJ acknowledges that Plaintiff "was medically advised surgical treatment was not an option and [Plaintiff] has continued to undergo conservative treatment." (Doc. 12-3 at 21) Furthermore, Plaintiff had carpal tunnel surgery during the adjudicated period, which is not properly characterized as "conservative." *See Billie Jean R. v. Saul*, 2020 WL 1505720 at *3 (C.D. Cal. Mar. 30, 2020) (finding the ALJ erred rejecting a claimant's testimony on the grounds that she received "routine and conservative" treatment where the claimant had "carpal tunnel release surgery, which [was] indisputably not conservative"). Therefore, to the extent the ALJ purported to reject the reaching and handling limitations to which Plaintiff testified on due to conservative treatment, this factor does not support the ALJ's adverse credibility determination. *See, e.g.*, *Calleres v. Comm'r of Soc. Sec.*, 2020 WL 4042904 at *5 (E.D. Cal. July 17, 2020) (concluding the claimant's conservative treatment was not a clear and convincing reason for discounting the claimant's testimony where the ALJ did not identify any additional "treatment that is available for such impairments…that the [claimant] did not use").

        c.       *Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine … credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681; *see also* SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). In rejecting testimony as conflicting with the medical record, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d

1195, 1208 (9th Cir. 2001). The ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ did not base her decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff.  However, the other reasons identified by the ALJ failed to support the adverse credibility determination, and a conflict with the objective medical evidence is the only reason remaining in support of the credibility finding.  Because it is well-established that a claimant's subjective complaints may not be discredited as unsupported by the medical record, this factor alone cannot support the ALJ's decision to reject Plaintiff's testimony.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence").

Regardless, the ALJ failed to identify evidence in the record that conflicted with Plaintiff's testimony concerning his pain.  To the contrary, the ALJ acknowledged Plaintiff had "a visible abnormality associated with his history of injury apparent in his right shoulder, and "examinations consistently revealed limited range of motion and/or pain with range of motion and diffuse tenderness of the shoulder." (Doc. 12-3 at 21)  The ALJ also noted that an MRI in 2015 "revealed partial articular surface tear of the subscapularis with an interstitial component," and a subsequent "MRI revealed findings consent with absence of the biceps tendon." (*Id.*)  Further, Plaintiff testified that he had pain in his right hip, and the ALJ acknowledged "examinations revealed tenderness and occasions of limited range of motion of the right hip." (*Id.*)  Because the ALJ failed to explain how these findings conflicted with Plaintiff's testimony, the objective medical record could not support the decision to reject Plaintiff's statements concerning his limitations with reaching, sitting, and walking.

**B.      Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester*, 81 F.3d at 830.  In general, the opinion of a treating physician is afforded the greatest weight. *Id.*; *see* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506

(9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical physician only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting limitations identified by Dr. William Pistel[2], his treating physician. (Doc. 24 at 13-22) Because the opinion was contradicted by state agency medical consultants and consultative examiner (*see* Doc. 12-3 at 22-24), the ALJ was required to identify specific and legitimate reasons for rejecting the opinion of Dr. Pistel. *See Lester*, 81 F.3d at 831.

1.     Opinions of Dr. Pistel

Dr. Pistel began treating Plaintiff in April 2017 for neck pain and radiculopathy, bilateral shoulder pain, low back pain, and right knee pain. (Doc. 12-8 at 104) On April 18, 2018, Dr. Pistel completed a questionnaire regarding Plaintiff's impairments. (*Id.* at 104-108) Dr. Pistel opined Plaintiff had "multiple musculoskeletal condit[ions]," with pain and weakness in his upper and lower extremities. (*Id.* at 104) According to Dr. Pistel, Plaintiff was precluded from excessive standing, climbing, bending, stooping, and lifting. (*Id.*) Further, Dr. Pistel indicated Plaintiff could sit 45 minutes at one time, stand 30 minutes at one time, and walk for 45 minutes at one time. (*Id.* at 105) In total, he believed Plaintiff could sit for at least six hours in an eight-hour day and stand/walk for at least six hours in an eight-hour day. (*Id.*) Dr. Pistel opined Plaintiff needed to be able to shift

---

[2] The ALJ erroneously referred to Dr. Pistel as "Dr. Pisto" in her opinion. (Doc. 12-3 at 23-34) Similarly, the Commissioner refers to the physician by the wrong name throughout the responsive brief. (*See* Doc. 25 at 4-9)

positions at will from sitting, standing, or walking.  (*Id.*)  He believed Plaintiff was limited to lifting and carrying ten pounds occasionally, could rarely lift 20 pounds, and never lift or carry 50 pounds. (*Id.* at 106)  Dr. Pistel determined Plaintiff could occasionally twist; rarely stoop, crouch, squat, and climb.  (*Id.*)  He concluded Plaintiff had "good days" and "bad days" and was likely to be absent from work about four days per month.  (*Id.* at 106-107)

        2.     The ALJ's evaluation of the opinions

Addressing the medical evidence, the ALJ indicated the opinion of Dr. Pistel was "given little weight."  (Doc. 12-3 at 24)  The ALJ explained the weight given as follows:

> While the opinion is based upon a treatment history with the claimant, which began April 25, 2017, the limitations are overall inconsistent with the evidence in the record. This includes the claimant's treatment history, and infrequent care undertaken during 2017 and 2018.  The limitations are inconsistent with the objective findings noted in the records.  Additionally, the opinion is inconsistent with evidence of the claimant's activities.  This includes his ability to perform light household chores, exercise, attend to his care, care for hid dogs, and drive (Exhibits 14E; 4F; 8F; 9F; and hearing testimony).  Moreover, the opinion was generated on a preprinted form wherein Dr. [Pistel] identified limitations by placing a mark next to a corresponding finding. The opinion includes little, to no, discussion of what objective medical evidence supports the limitations noted in the opinion.  The only finding noted in the opinion was the claimant "reports pain" and weakness in his extremities.  Nevertheless, the opinion was considered in determining the severity of the claimant's impairments.

(*Id.*)  Plaintiff argues the ALJ failed to identify any "specific and legitimate" reasons to the limitations identified by Dr. Pistel.  (Doc. 24 at 13, emphasis omitted)

        *a.*     *Treatment relationship*

An ALJ may consider the length and frequency of treatment in evaluating what weight to give the opinion of a treating physician. 20 C.F.R. § 404.1527(c)(2)(i); *see also Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant in weighing opinion); *Allen v. Comm'r of Soc. Sec.*, 498 Fed. App'x 696, 697 (9th Cir. 2012) (finding a "limited treatment relationship with [the claimant] was a specific and legitimate reason to assign little weight" to the treating physician's opinion).  However, a limited treatment relationship cannot alone support the rejection of a treating physician's opinion. *Rodriguez v. Berryhill*, 2017 WL 896304 at *10 (E.D. Cal. Mar. 6, 2017); *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (holding that while a limited treating relationship may be a valid reason for not giving controlling weight to the opinion of a treating physician, "it is not by itself a basis for rejecting them").  Thus, this

factor alone cannot support the ALJ's decision to reject the physical functional limitations identified by Dr. Pistel in his medical statement.

The Ninth Circuit indicated that a physician who treats a patient even only once may be considered a treating source when the physician's opinion represents both personal knowledge of a patient's condition and information communicated by other members of a treating team. *See Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003). Dr. Pistel both examined Plaintiff and was aware of his treatment history. (*See* Doc. 12 at 8-9 [noting Plaintiff had previously consulted with Dr. Purnell and had carpal tunnel surgery]). Thus, Dr. Pistel's opinions were entitled to the weight of a treating physician, and the ALJ erred in rejecting the opinions due to the length of the treatment relationship.

    *b.*  *Treatment received*

Previously, this Court determined, "A conservative course of treatment relative to a finding of total disability is a proper basis for discounting the extreme restrictions reported by a treating physician." *Nicola v. Astrue*, 2010 U.S. Dist. LEXIS 42099, at *22 (E.D. Cal. April 29, 2010) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may reject opinion of treating physician who prescribed conservative treatment yet opined that claimant was disabled). However, Plaintiff was informed by his physician that "due to the chronicity of his injury, surgery is not an option." (*See* Doc. 12-8 at 89) Further, as discussed above, the ALJ fails to identify any additional—or more aggressive—treatment Plaintiff could have received for his impairments.

Because the ALJ failed to explain how the treatment received by Plaintiff was inconsistent with the limitations identified by Dr. Pistel, this factor does not support his decision to give "little weight" to the opinion of Dr. Pistel.

    *c.*  *Plaintiff's level of activity*

The Ninth Circuit determined an ALJ may reject an opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins*, 261 F.3d at 856; *see also Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting an opinion where the assessment was based upon the claimant's subjective complaints and limitations identified by the doctor conflicted with the claimant's daily activities).

The ALJ found the conclusions of Dr. Pistel were "inconsistent with evidence of the claimant's activities," including "his ability to perform light household chores, exercise, attend to his care, care for his dogs, and drive." (Doc. 12-3 at 24)  However, Plaintiff indicated that he had difficulty with chores, such has hanging clothes, "moving things around in the garage, keeping things clean," and using a broom for more than twenty minutes. (*Id.* at 48-49)  Further, Plaintiff said he felt his leg "could give out at any time" when walking, but exercising helped with his arthritis and he could walk a quarter of a mile with his dogs. (*Id.* at 42, 52)  The ALJ fails to explain how these activities were inconsistent with the limitations identified by Dr. Pistel.  For example, the ALJ fails to explain how Plaintiff's limited chores indicate he could perform postural activities such as stopping, crouching, and climbing more frequently than Dr. Pistel identified.  Consequently, this factor does not support the ALJ's decision to reject the physical limitations identified by Dr. Pistel.

    *d.*  *Inconsistency with the medical record*

An ALJ may reject the opinions of a physician where the opinions are inconsistent with the overall record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999). However, to reject an opinion as inconsistent with the physician's notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  To reject an opinion as contradicted by the medical record, the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey*, 849 F.2d at 421-22.

The ALJ found the conclusions of Dr. Pistel were "inconsistent with imagining studies and objective findings noted in the records." (Doc. 12-3 at 24)  However, the ALJ did not identify any specific findings that she believed were inconsistent with the limitations identified by Dr. Pistel.  For example, Dr. Kerr opined Plaintiff could only occasionally lift up to ten pounds and rarely lift twenty pounds or more. (*See* Doc. 12-8 at 106). The ALJ has not identified any objective findings, diagnostic tests, or treatment records that are inconsistent with these limitations.  Because the ALJ failed to

identify specific conflicts with the medical record, she erred in rejecting the limitations identified by Dr. Pistel due to inconsistencies with the medical record. *See Embrey*, 849 F.2d at 421-22.

### e. Check-box form

The ALJ is not obliged to accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Consequently, the Ninth Circuit established that an ALJ may discount a treating physician's opinion is in the form of a checklist where the opinion lacks supportive objective evidence. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003) ("treating physicians' views carried only minimal evidentiary weight" when in the form of a checklist that lacks supportive objective evidence).

Importantly, however, the ALJ should not evaluate a questionnaire completed by a physician in a vacuum, and must look to the records to determine whether the treatment records support the conclusions identified in a form *See Cathey v. Comm'r of Soc. Sec.*, 2012 WL 1657538 at *12 (May 10, 2012) (criticizing the ALJ, who "only looked to the one-page questionnaire in a vacuum," and finding the ALJ erred where he failed to "look to the entirety of [the physician's] observations"), *adopted* 2012 WL 2027004 (June 5, 2012). Although the questionnaire completed by Dr. Pistel did not include a section to identify objective findings to support his conclusion, Dr. Pistel noted Plaintiff exhibited weakness in his upper and lower extremities. (*See* Doc. 12-8 at 104) This is also documented in the treatment notes, as Dr. Pitel noted Plaintiff demonstrated "[w]eakness at 90 degrees elevation and full internal rotation" with his shoulders, as well as reduced flexion strength, reduced extension strength, positive Spurling compression test, and positive Tinel's test. (Doc. 12-8 at 95, 96) Thus, the treatment record provides supportive objective evidence for the questionnaire completed by Dr. Pistel, and the ALJ erred in rejecting the limitations due to check-box nature of the form. *See Batson*, 359 F.3d at 1195; *Cathey*, 2012 WL 1657538 at *12.

### 3. Conclusion

The ALJ failed to carry the burden to identify specific and legitimate reasons, supported by the record, to reject the limitations identified by Dr. Pistel. Consequently, the ALJ erred in evaluating the

medical record and rejecting the physical limitations identified by Plaintiff's treating physician.

**C.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting the limitations identified by Dr. Pistel. Because the ALJ failed to resolve the conflicts in the record regarding Plaintiff's limitations, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886. In addition, the matter may be remanded further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony. *See, e.g., Bunnell*, 947 F.2d at 348; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further proceedings related to the adverse credibility determination). Thus, the Court finds remand is appropriate for an ALJ to reconsider the medical evidence, clarify the extent to which Plaintiff's

**CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in evaluating the medical record and Plaintiff's subjective complaints. Consequently, the ALJ's decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. Plaintiff's appeal of the administrative decision denying benefits (Doc. 24) is **GRANTED**;

2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Robert Wojtowicz, and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __January 19, 2021__         ___/s/ Jennifer L. Thurston___
UNITED STATES MAGISTRATE JUDGE